**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Valandra, | No. CV-25-02665-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Sur-Ron USA LLC, et al., | |
| Defendants. | |

This case tells the classic tale of a products liability dispute involving a distant defendant. Before the Court are Defendant Chongqing Qiulong Technology Co.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 15) and Plaintiff Valandra's Motion for Jurisdictional Discovery (Doc. 22). The Court will grant Defendant's Motion (Doc. 15) and deny Plaintiff's Motion (Doc. 22).

**I.  BACKGROUND**

In February 2023, Plaintiff Shawn Valandra, an Arizona citizen, bought an electric motorcycle from a website operated by Defendant Sur-Ron USA LLC, a California-based company. (Docs. 29 at 4; 23-1 at 2 ¶ 1.) One month later, he was injured while riding that motorcycle. (Doc. 1-1 at 196 ¶ 13.) He claims that the bike "accelerated uncontrollably" from underneath him and sues the bike's Chinese manufacturer, Chongqing Qiulong Technology Co., Ltd. ("CQT"), along with U.S. distributors Sur-Ron USA LLC and Luna Cycles LLC (collectively, the "Luna Defendants").[*] (*Id.* at 195-96 ¶¶ 2-5, 13.) Plaintiff

---

[*] The Third Amended Complaint also named Fetchlight, Inc. (Doc. 1-1 at 195 ¶ 4), which is no longer part of this action (Doc. 40).

asserts claims for (1) strict products liability, (2) Arizona products liability under A.R.S. § 12-681, (3) consumer fraud under A.R.S. § 44-1522, and (4) negligence. (*Id.* at 198-203 ¶¶ 25-47.)

Plaintiff originally filed in Arizona Superior Court, and CQT removed the case to this Court. (Doc. 1.) CQT then moved to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(2). (Doc. 15.) Plaintiff and the Luna Defendants opposed (Docs. 21, 23) and CQT replied (Doc. 29). As a fallback, Plaintiff moved for jurisdictional discovery (Doc. 22). That motion is now fully briefed (Docs. 30, 37).

## II.  DEFENDANT CQT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The parties do not dispute that (1) CQT manufactured the e-bike, (2) CQT shipped the bike to Luna Cycles in California, and (3) Plaintiff purchased the e-bike from California-based Sur-Ron USA via its website. (Docs. 15 at 1, 4; 21 at 1; 23 at 2-3; 23-1 at 2 ¶ 1; 29 at 2, 4.) They dispute, however, the nature and extent of CQT's Arizona related activities during the relevant period. Plaintiff contends that CQT has a network of U.S. distributors and vendors selling the type of e-bike at issue and that CQT's website contains a "Dealer Map" showing at least three authorized dealers in Arizona. (Doc. 21 at 5.) The Luna Defendants similarly argue that CQT's website directs U.S. customers to local dealers—including those in Arizona—for support, service, and product inquiries. (Doc. 23 at 4, 10.) CQT responds that it "did not have any direct dealings with Arizona retailers, nor did it ship its product to an Arizona-based distributor." (Doc. 29 at 4.)

### A.  Legal Standard

When a defendant moves to dismiss under Rule 12(b)(2), the plaintiff "bears the burden of establishing that jurisdiction is proper." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023) (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)). "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true."

*Mavrix Photo*, 647 F.3d at 1223 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).

When no federal statute supplies a rule for personal jurisdiction, the Court applies the law of the state in which it sits. *Herbal Brands*, 72 F.4th at 1089. Arizona's long-arm rule permits jurisdiction to the full extent allowed by the Arizona and United States Constitutions. Ariz. R. Civ. P. 4.2(a). Arizona's constitutional requirements for personal jurisdiction are coextensive with federal due process. *Herbal Brands*, 72 F.4th at 1089.

For a court to have personal jurisdiction over a non-resident defendant, federal due process requires that the defendant has "certain minimum contacts" with the forum state so that the lawsuit "does not offend traditional notions of fair play and substantial justice." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750 (9th Cir. 2025) (en banc) (citation modified); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction may be general or specific. *Briskin*, 135 F.4th at 750. Plaintiff concedes that this Court lacks general jurisdiction over CQT. (Doc. 21 at 9.) The question, therefore, is whether the Court may exercise specific jurisdiction.

Specific jurisdiction exists where the defendant's suit-related conduct creates a "substantial connection" to the forum state. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The Ninth Circuit analyzes specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.1987)). "The plaintiff bears the burden of satisfying the first two prongs of the test."

1 *Id.* If Plaintiff establishes the first two prongs, the burden shifts to CQT to show that the third is not met. *See id.* "All three prongs must be satisfied to assert personal jurisdiction, but the first two prongs have a unique relationship to one another." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022). "This court has stated that in its consideration of the first two prongs, a strong showing on one axis will permit a lesser showing on the other." *Id.* (citation modified).

### B. Purposeful Availment

CQT argues that the Court should apply the Ninth Circuit's "purposeful direction" test to analyze the first *Schwarzenegger* prong. The Ninth Circuit has clarified that there is no "hard-and-fast rule" governing which test applies and that "the first prong may be satisfied by purposeful availment, by purposeful direction, or by some combination thereof." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023) (citation modified). The Court observes that the Supreme Court and Ninth Circuit have applied the purposeful availment analysis in products liability cases. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011); *LNS Enters.*, 22 F.4th at 859-60. Because Plaintiff relies on that test, the Court will use it here. (Doc. 21 at 8-14.)

A defendant purposefully avails itself of a forum if it has "deliberately engaged in significant activities within a State or has created continuing obligations between himself and the residents of the forum." *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citation modified). Placing a product into the stream of commerce, standing alone, is not enough. *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987). There must be "something more," such as "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.*

The Supreme Court's "something more" jurisprudence sets out a spectrum. At one end sits *World-Wide Volkswagen*, where the regional distributor and retail dealer conducted

1  "no activity whatsoever in Oklahoma," had no advertising or distribution channels reaching the forum, and therefore lacked the requisite "affiliating circumstances" to establish jurisdiction. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). *Nicastro* falls close to that end of the range: the manufacturer sold through a nationwide distributor, but there was no evidence it singled out New Jersey or otherwise directed activity there, and the product's arrival in the forum did not establish purposeful availment. 564 U.S. at 878, 886-87. At the opposite end is *Ford*, where Ford Motor Company blanketed the forum states with advertising, maintained several dealerships, serviced and repaired vehicles locally, and distributed replacement parts for the same models involved in the accidents—conduct that satisfied purposeful availment. 592 U.S. at 364-67, 371.

Plaintiff argues this case resembles *Ford*, asserting that "CQT's conduct demonstrates an intentional effort to cultivate and profit from the Arizona market." (Doc. 21 at 11.) The complaint, however, merely alleges that CQT is "authorized to do business in the United States." (Doc. 1-1 at 195 ¶ 3.) In his opposition to CQT's motion, Plaintiff argues that CQT's website contains a "Dealer Map" listing three authorized retailers located in Arizona. (Doc. 21 at 5.) The Luna Defendants assert that the website directs U.S. customers—including Arizona residents—to those local dealers for service, support, and product inquiries. (Doc. 23 at 4, 10.) Plaintiff also notes that CQT instructs U.S. customers, through its website and manuals, to bring Sur-Ron motorcycles to "any authorized Sur-Ron dealer," including those in Arizona. (Doc. 22 at 3.) An April 2023 Instagram post similarly directed U.S. customers to CQT's "authorized dealers" on its website. (Docs. 23-1 at 5 ¶ 17; 23 at 3.) And CQT's General Counsel confirms that CQT's website "lists a 'Dealer Map' to reflect the dealer/retailers with whom CQT's distributors contract." (Doc. 29-1 at 4 ¶ 12.)

The question is whether these allegations of CQT's website and dealer listings constitute "something more." A "passive website" alone does not constitute sufficient purposeful availment to confer jurisdiction. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006). *LNS Enterprises* is instructive here. There, the plaintiffs argued that

- 5 -

a defendant established jurisdiction because its website listed four Arizona repair and installation shops. *LNS Enters.*, 22 F.4th at 863. The Ninth Circuit disagreed, holding that the website's existence was insufficient to establish personal jurisdiction. *Id.*; *see also Underwood v. O'Reilly Auto Parts, Inc.*, No. 2:21-CV-01766-GMN-NJK, 2023 WL 1869310, at *6 (D. Nev. Feb. 8, 2023) (finding a website insufficient to establish personal jurisdiction because it had "minimal interactivity" and no evidence of "a specific focus on the Nevada market").

Although a website alone does not suffice, *Asahi* recognizes that designing a product for a forum, advertising there, establishing advice channels, or marketing through a distributor serving as a forum sales agent can satisfy the purposeful availment standard. 480 U.S. at 112. Plaintiff attempts to rely on CQT's relationship with its dealers to satisfy this standard. (Docs. 21 at 13-14; 23 at 10-11.) In *LNS Enterprises*, the plaintiffs made the same argument, contending that the operation of repair shops supplied the necessary contacts. 22 F.4th at 863. The Ninth Circuit rejected that argument because the defendant was not authorized to do business in Arizona, had no employees or offices there, and owned no property in the State. *Id.*

According to CQT's General Counsel's declaration, the same is true here: it is "not registered to do business in Arizona, and has neither employees nor direct business operations there." (Doc. 16-1 at 4 ¶ 9.) It also "does not have an office in the United States." (*Id.* ¶ 10.) Plaintiff does not refute this, nor does he submit a declaration contradicting CQT's position. (*See generally* Doc. 21.) Instead, he argues that CQT availed itself of the forum by directing consumers to local dealers and relying on those dealers' "market presence." (*Id.* at 7.)

The Luna Defendants submit a declaration from Sur-Ron USA LLC's manager, Eric Hicks. (Doc. 23-1 at 2-6.) Hicks recounts that CQT's principal believed it was important to "sell directly into the USA." (*Id.* at 2 ¶ 5.) He also describes a CQT employee, Koki Wang, who attended U.S. trade shows and served as the "sole USA national sales representative for Surron e-bikes." (*Id.* at 3-4, 6 ¶¶ 8-9, 18.) These allegations do not

contradict CQT's declaration that it lacks operations in Arizona. They at most suggest a potential U.S. office in Colorado. (*See id.* at 5 ¶ 15.) And CQT responds that while Wang liaised with U.S. distributors, none were based in Arizona. (Doc. 29-1 at 3 ¶ 8.)

Taken together, these facts evidence two points. First, the dealers are unaffiliated third parties. *See LNS Enters.*, 22 F.4th at 863; *see also Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 265 (2017) (holding that "a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction" (citation modified)). Second, CQT's contacts do not resemble the "extensive[] market[ing]" that justified jurisdiction in *Ford*. *See* 592 U.S. at 368; *LNS Enters.*, 22 F.4th at 863 ("There is no indication that Continental advertised, sold, or serviced the type of Continental engine at issue here in Arizona, much less to the extreme degree that Ford advertised, sold, and serviced its vehicles in [the forum states].").

Accepting these contacts as sufficient would mean that "most international firms selling into the U.S. market would be at home in most U.S. states, despite being neither incorporated nor headquartered in any of them." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023). The Court therefore holds that CQT has not purposefully availed itself of jurisdiction in Arizona.

### C. Arise Out of Or Relate To

Even if the defects discussed above did not exist, another problem remains: the "arise out of or relate to" prong. In *LNS Enterprises*, the Ninth Circuit held that this prong was not satisfied even assuming the plaintiffs operated the repair centers themselves. 22 F.4th at 863. The court reasoned that the plaintiffs had not established that their injuries arose out of or related to the defendant's contacts with the forum because they did "not allege that any of these repair shops worked on the engine in Plaintiffs' aircraft or the type of engine at issue." *Id.* The presence of four repair shops, without more, was therefore insufficient to show that the defendant "continuously and deliberately exploited" the Arizona market for the specific product involved. *Id. (*quoting *Ford*, 592 U.S. at 364).

The same analysis applies here. Plaintiff identifies Arizona dealers but does not

1 argue that these dealers were part of CQT's distribution network for the e-bike model
2 involved in the accident. (*See* Doc. 21 at 14-16.) Instead, he argues that "CQT's purposeful
3 activities directed at Arizona need not involve the electric bicycle or its component parts"
4 for the contacts to be sufficiently related. (*Id.* at 15-16.)

5       The Supreme Court in *Ford* grounded specific jurisdiction in the fact that Ford
6 Motor Company sold the relevant vehicle models to consumers in the forum states. *See*
7 592 U.S. at 367-68. In *Yamashita*, the plaintiff asserted products liability claims related to
8 the design, manufacture, and distribution of a specific type of battery. 62 F.4th at 501. The
9 Ninth Circuit held that the "arise out of or relate to" requirement was not satisfied because
10 the plaintiff did not show that the defendant's forum contacts involved the batteries at issue.
11 *Id.* at 506-07.

12       Plaintiff's failure to allege that the Arizona dealers were part of CQT's distribution
13 network for the e-bike model at issue is fatal to the "arise out of or relate to" prong. But
14 even if that were not the case, CQT points to another flaw with jurisdiction: timing. CQT
15 argues that even assuming its limited contacts were sufficient, Plaintiff has not shown that
16 his claims arise out of CQT's Arizona contacts at the time the cause of action accrued.
17 (Doc. 29 at 4.)

18       Due process looks to the defendant's contacts "when the events that gave rise to the
19 suit occurred," not at the time of the lawsuit. *Steel v. United States*, 813 F.2d 1545, 1549
20 (9th Cir. 1987). Courts evaluating specific jurisdiction focus on "those contacts leading up
21 to and surrounding the accrual of the cause of action. Later events are not considered."
22 *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 849 (10th Cir. 2020) (quoting 16 James Wm.
23 Moore et al., Moore's Federal Practice § 108.42[2][a] at 55-56 (3d ed. 2011)). In a
24 personal-injury products-liability case, the cause of action accrues at the time of injury. *See*
25 *Mack v. A.H. Robins Co.*, 573 F. Supp. 149, 154 (D. Ariz. 1983), aff'd, 759 F.2d 1482 (9th
26 Cir. 1985) ("In other words, in Arizona a cause of action accrues once the plaintiff knows
27 of the injury and the causal connection between the defendant's product and that injury.").
28       Here, the timeline is as follows: CQT shipped the bike to Luna Cycles in August

2022 (Doc. 29 at 4); Plaintiff purchased the bike from the Luna Defendants in February 2023 (*Id.*; Doc. 23-1 at 2 ¶ 1); and Plaintiff was injured while riding the bike in March 2023 (Doc. 1-1 at 196 ¶ 13). Thus, the relevant period extends at least through March 2023, when Plaintiff claims he was injured in Arizona.

At oral argument, CQT argued that both the April 2023 Instagram post and the current version of CQT's website postdate accrual of the cause of action. The Court agrees. On this record, the Court cannot determine whether the dealer map listing Arizona retailers existed before Plaintiff's accident. Plaintiff has therefore not met his burden. *Herbal Brands*, 72 F.4th at 1090; *see also Henrietta Mine LLC v. A.M. King Indus. Inc.*, No. CV-20-01106-PHX-SMB, 2021 WL 1561505, at *3-4 (D. Ariz. Apr. 21, 2021) (holding that the court would not consider forum contacts that did not occur "at the time the cause of action arose" (quoting *Steel*, 813 F.2d at 1549)).

Allowing postdated evidence would "give 'relate to' too broad a scope" and risk "collaps[ing] the core distinction between general and specific personal jurisdiction." *Yamashita*, 62 F.4th at 506 (alteration in original) (quoting *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 866 (D.C. Cir. 2022)). Plaintiff has therefore failed to establish both purposeful availment and the "arise out of or relate to" prong. The burden need not shift to CQT to prove the third *Schwarzenegger* prong. *See* 374 F.3d at 802. Accordingly, the Court finds that it lacks personal jurisdiction over CQT and will grant its Motion to Dismiss (Doc. 15).

**III.   PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY**

Plaintiff moves for jurisdictional discovery to investigate CQT's Arizona-directed activities. (Doc. 22.) He argues this discovery is necessary to develop controverted jurisdictional facts. (*Id.* at 4-7.) CQT responds that Plaintiff has not made a prima facie showing of jurisdiction and that the requested discovery rests on speculation and "hunches." (Doc. 30 at 2-4.) The Court agrees with CQT and will deny Plaintiff's Motion (Doc. 22).

. . . .

### A. Legal Standard

District courts are "vested with broad discretion to permit or deny discovery," and "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir.1986)). But discovery may be denied when "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Id.* (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir.1977)).

The central question is whether the requesting party provides "an explanation of how discovery might change the outcome of the Court's jurisdictional findings." *Hernandez v. Mimi's Rock Corp.*, 632 F. Supp. 3d 1052, 1062 (N.D. Cal. 2022). Without that showing, the request "is tantamount to a fishing expedition." *SmartHealth Inc. v. Chemotechnique MB Diagnostics AB*, No. CV-25-00115-PHX-JJT, 2025 WL 1697425, at *2 (D. Ariz. June 17, 2025).

### B. Analysis

The Court notes at the outset that there is nothing "limited" about Plaintiff's jurisdictional requests. Plaintiff seeks ten requests for production, four Rule 30(b)(6) depositions—including one of a dismissed defendant and two non-party dealers—and two fact depositions. (Doc. 22 at 8.) Even limited discovery is unwarranted here. Plaintiff's broader requests concerning CQT's revenue from Arizona sales, contacts, and marketing rest on hunches. They are not tied to factual allegations beyond the website-identified dealers, a theory that fails for the reasons explained above. (*See id.* at 4-6.)

Plaintiff also seeks discovery regarding Fetchlight Inc. to determine whether it was "operating as CQT's agent or alter ego during the relevant period." (*Id.* at 6-8.) That argument requires several unsupported leaps, including reliance on a forum post from an unidentified customer. (*See id.* at 15-16.) Fetchlight is also no longer part of the action (Doc. 40), and CQT specifically rebutted Plaintiff's arguments about Fetchlight. (Docs. 29

at 7-11; 29-1 at 4 ¶ 14); *see Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir. 1995) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery" (alteration in original) (quoting *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C.1988))). Accordingly, Plaintiff's arguments fail. *See LNS Enters.*, 22 F.4th at 865 (rejecting jurisdictional discovery where plaintiffs sought to confirm defendants' ties to service shops because the request rested on a "hunch").

The Luna Defendants' arguments fare no better. At oral argument, they noted that only one month separated the April 2023 post from the March 2023 incident. They suggested there was a "serious question" about how CQT could have "signed up 60 dealers within 30 days." They conceded, however, that "we're not saying that it's not possible." That argument is speculative and is the kind of hunch that cannot support jurisdictional discovery. *See Yamashita*, 62 F.4th at 508 (rejecting a motion for jurisdictional discovery because "Yamashita has given no reason to think that the battery came from such a device—he only says that it cannot be ruled out").

In sum, jurisdictional discovery is unnecessary and "would be little more than a fishing expedition." *Id*. The Court therefore denies Plaintiff's Motion (Doc. 22).

**IV.   LEAVE TO AMEND**

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend should be given freely "when justice so requires." But it is not required when amendment "would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). A district court has discretion whether to grant or deny leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiff did not request leave to amend. (*See* Docs. 21, 22.) His request for jurisdictional discovery confirms that he lacks additional facts to establish jurisdiction over CQT, and amendment cannot cure that deficiency. Amendment would therefore be futile. *See Ascon Props.*, 866 F.2d at 1160.

**IT IS THEREFORE ORDERED granting** Defendant CQT's Motion to Dismiss (Doc. 15). Defendant CQT is dismissed without prejudice.

**IT IS FURTHER ORDERED denying** Plaintiff Valandra's Motion for Jurisdictional Discovery (Doc. 22) without prejudice.

Dated this 2nd day of December, 2025.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge